UNITED STATES *v.* SALISBURY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF CALIFORNIA.

No. 167.   Submitted January 23, 1895. — Decided March 4, 1895.

*United States* v. *Piatt and Salisbury, ante,* p. 113, followed.

THE case is stated in the opinion.

*Mr. Solicitor General* for plaintiffs in error.

*Mr. Monroe Salisbury* in person for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This case differs very little from the one just determined. The complaint is in three counts. The first count alleges in substance that on March 15, 1878, one Thomas A. McDevitt contracted in writing with the United States, through the Postmaster General, to carry the mail on the route then known as No. 36,115, six times a week for the period of four years from July 1, 1878, for a consideration of $6425, per

annum, between Helena, Montana, by way of Hot Springs
and Black Foot City, Toll Gate, Deer Lodge, Yamhill,
Pioneer, New Chicago, and Bear's Mouth and Missoula and
back.   In pursuance of this contract McDevitt entered upon
and continued the performance of the service until October
1, 1878, at which date he sublet his contract to Monroe Sal-
isbury, the defendant, who performed the service during the
remainder of the said contract term, to wit, until June 30,
1882.   On July 1, 1879, the subcontract was duly recognized
by the Postmaster General, and thenceforth such sums as
were due and payable by virtue of the original contract, as
afterwards amended and changed in the manner hereinafter
set forth, were paid to said Salisbury.

For the purpose of expediting the service between Helena
and Missoula and the intermediate places mentioned, the
Postmaster General and McDevitt agreed, on December 24,
1878, to shorten the schedule of departures and arrivals on
said route from January 1, 1879, and to increase the service.
Accordingly, by order of the Postmaster General, the running
time upon the route was reduced from 36 hours in summer
and 59 in winter to 30 hours in summer and 45 hours in win-
ter, in consideration of which an additional sum was allowed
of $9637.50 per annum, in supposed accordance with the pro-
visions of section 3961 of the Revised Statutes of the United
States.   By said order the service was also increased one trip
per week from January 1, 1879, for which an additional an-
nual allowance of $2671.08 was made — such allowance being
computed *pro rata* upon the basis of the compensation in the
original contract as increased by the additional allowance for
increase of speed.   These changes were agreed to by McDevitt.

After the execution of the subcontract between McDevitt
and Salisbury, whereby all moneys thereafter due the former
under the original contract were to be paid to the latter,
McDevitt, in his own name, but in the interest and at the in-
stigation of Salisbury, did, by means of certain false and fraud-
ulent representations set forth in a sworn statement dated
December 18, 1878, represent to the Postmaster General that,
in order to perform the service upon the then existing schedule

it required 6 men and 24 horses, and to perform the proposed expedited service would require 15 men and 60 horses, which representations were wholly false and fraudulent in that neither McDevitt nor Salisbury ever required or used in carrying the mail upon the expedited schedule any greater number of men or horses than McDevitt alleged in his sworn statement were required for or actually used in performing the service upon the original schedule. And those false representations were designed to mislead and did mislead the Postmaster General.

By means of such fraudulent statements by McDevitt, and by means of fraudulent vouchers presented to the Post Office Department, Salisbury was paid by and received from the United States a larger sum of money than he was entitled to for the performance of such mail service under the amended contract. The sum so received by him in excess of what he was legally entitled to receive between July 1, 1879, (the date on which the subcontract was first recognized by the Post Office Department,) and July 1, 1882, was $30,690.16. The original contract between the plaintiff and McDevitt and the subcontract between McDevitt and Salisbury were exhibited with the complaint and made part thereof.

Judgment was demanded for this sum with interest from July 31, 1882, and costs.

The second count is the common law count for money had and received.

The third count sets forth the same facts as in the first count, and alleges that by reason thereof the plaintiff's officers were induced to pay the moneys aforesaid from July 1, 1879, to July 31, 1882, amounting in the aggregate to $30,690.16, which sum was paid by the plaintiff's officers as above set forth, in mistake of fact, and was received by said defendant contrary to the provisions of section 3961 of the Revised Statutes of the United States.

In this case the subcontractor only was sued, while in the former case both the principal contractor and the subcontractor were sued.

The present case is controlled by the decision just rendered in *United States* v. *Piatt, ante,* 113.

*The judgment is reversed and the cause remanded with directions to overrule the demurrer, and for further proceedings in conformity with this opinion.*

The decision in this and the preceding case control cases 168, 169, 170, 171, the title of each of those cases being *United States* v. *Salisbury.* The judgment in each case is reversed and the cause remanded with directions to overrule the demurrer and put the defendant to his answer.

*Reversed.*